## LILENQUIST v. UTAH STATE NAT. BANK.

No. 6117.   Decided March 6, 1940.   (100 P. 2d 185.)

*Newell L. Liljenquist,* of Salt Lake City, Utah, for appellant.

*Cheney, Jensen, Marr & Wilkins,* of Salt Lake City for respondent.

McDONOUGH, Justice.

Plaintiff brought this action to recover for the alleged conversion by the defendant of a certain savings account passbook and the savings account represented thereby, of the value of two hundred dollars. In addition to the value of the savings account, plaintiff prayed special and exemplary damages. Defendant's answer is a general denial.

The record discloses that plaintiff's brother-in-law, L. W. Lilenquist, desiring to borrow $500, arranged to have his

mother and the plaintiff each open a savings account in the sum of $200 with the defendant bank, for the purpose of pledging the same, with other available collateral, to said bank as security for the required loan. The money was accordingly deposited and the passbooks issued. Thereupon, the two accounts, together with a $150 note of a third party of which the mother was payee, and a conditional sales contract on an automobile of which the borrower was the purchaser, were pledged to the defendant bank to secure the loan which was presently made. The passbooks and signed withdrawal slips were deposited with the lender.

The loan was made about September 1, 1937. The conversion is alleged to have taken place on December 17, 1937. The borrower defaulted, and plaintiff, upon the advice of her attorney before application of her savings account or the application of any of the security to the payment of the note, contacted the defendant through said attorney and offered to purchase the note of her brother-in-law, offering therefor the then face value thereof. Defendant agreed to do so provided plaintiff secured the consent of the maker. The maker gave such consent in a letter to the attorney, reading: "I am very glad that you talked mother and Pearl into buying those notes that the Utah State Bank now holds. Please accept this as your authority to dispose of them as I need the money badly."

Upon the consent being exhibited to the cashier of the Bank a conversation ensued in which the attorney of plaintiff revealed that the maker, L. W. Lilenquist, was about to file a petition in bankruptcy. Whereupon the cashier stated that such fact made a great difference, and after consulting an attorney who happened to be in the bank refused to sell. The next day plaintiff through her attorney appeared at the bank and asked to pay off the note. The attorney had the money, borrowed by the plaintiff, to pay it in full. A valid tender was made. A written statutory offer to pay was also delivered to defendant. The latter refused the tender be-

cause of the contemplated bankruptcy proceeding, evidently because the cashier did not want the bank to be a party to a transaction which might involve the concealment of assets of a bankrupt. Subsequent to the defendant's refusal to accept the tendered payment, plaintiff herself went to the bank and demanded her passbook, on the theory that the tender had released the pledge and she was therefore entitled to the same. Defendant refused. Subsequently defendant applied the savings account on the debtor's note leaving a balance in the savings account of $3.50, and the passbook evidencing such balance, together with the other collateral, was turned over to the trustee in bankruptcy—the contemplated proceeding in bankruptcy having been commenced.

The case was tried to a jury. At the conclusion of the evidence the court directed a verdict "no cause of action" in favor of the defendant. Plaintiff appeals. She assigns numerous errors, the principal one being that the court erred in so directing a verdict for the reason that there was evidence adduced to justify a verdict for the plaintiff in that such evidence showed a valid tender of payment of the obligation secured by plaintiff's property, a refusal of said tender, and a subsequent conversion of such property. In short, appellant argues that the owner of property pledged to secure the debt of another has a right to pay the debt upon its maturing and thus, release his property and be subrogated to the rights of the creditor in the collateral; that a valid tender of payment refused by the creditor discharges the lien of the pledge; that the lien being so discharged, the refusal of the creditor to deliver the property to the owner and the subsequent application thereof to the payment of the debt for which it was pledged constituted a conversion; and hence, that defendant was liable in damages for said wrong.

Respondent "questions the applicability of the rule respecting the effect of tender, under the facts in this case, and insists in any event that appellant has suffered no dam-

age." Its position on this last stated proposition is substantially this: Appellant and her mother-in-law asked the pledgee to apply the money which they had pledged toward the payment of the note, tendering what additional cash was required to complete the payment, and asking that the other collateral be turned over to them. (Parenthetically it is to be noted that this is true as to their offer to *purchase* the note, but their subsequent offer to *pay* the note was accompanied by a tender of the total amount due, without application of the pledge.) The pledgee refused to comply. Had it acceded to the request the money in the pledged account would have been used to pay the note. They no longer would have had such money, but the note would have been paid. Subsequently, the pledgee did apply the money pledged to the payment of the note, that is, it did as the appellant had previously asked it to do. No damage, therefore, resulted. We quote from respondent's brief:

"Appellant relies upon the rule that a tender operates to release a lien, and ignores the fact that, assuming a wrong to have been done her, compensatory damages are limited to such as will restore her to the position she was in *before the wrongful act was committed*—not to give her something she did not possess."

It seems evident from this very statement of respondent's position that whether she was placed in the position she was in before the wrongful act was done depends upon the effect worked by the wrongful act or acts. If, as contented by appellant, the tender made by her discharged the lien of the pledge, if it placed her savings account legally at her disposal as it would have been had no pledge thereof been made, then it requires no labored reasoning to arrive at the conclusion that the defendant's subsequent assertion of the right to use it and the act of using it for its benefit was a pure act of appropriation, and that it is liable at least for its value.

We advert first then to the question of the legal effect of the tender of payment of the obligation by appellant and its

refusal by respondent. Two Utah cases are cited by appellant as supporting her position: *Hyams* v. *Bamberger*, 10 Utah 3, 36 P. 202, 205; and *Musser* v. *McCornick & Co.*, 57 Utah 62, 192 P. 1052. In *Hyams* v. *Bamberger*, supra, the facts, so far as pertinent here, were that plaintiffs borrowed the sum of $8,000 from defendants, executing their notes therefor, and delivering, as collateral, notes of a third party in the sum of over fourteen thousand dollars and two thousand shares of mining stock securing the same. After the plaintiffs' notes fell due, and after notice to defendants, the collateral was offered for sale and was purchased for the defendants by one of them. On the date of such sale, but after the sale was made, the plaintiffs made a written tender of the amount due on their notes for the purpose of redeeming the collateral, which tender or offer (the court held that there was some question of the sufficiency of the tender) was by the defendants refused. Action was duly commenced for the conversion of the collateral. The trial court gave judgment in favor of plaintiffs for the sum of $252, being the difference between the value of the securities as found by the court and the amount of plaintiffs' debt.

The opinion of the court, on appeal, concedes, for the purpose of the decision that the tender was sufficient and then poses the question: Did the tender discharge the lien of the pledgees and leave them in the same position as if no securities had been pledged? Plaintiffs' contention was that such was its effect. After holding that the sale of the securities by the pledgees to themselves was voidable at the election of the pledgors and that upon the latters' disaffirmance thereof the pledgees held the property "the same as before sale" the opinion states:

"After the sale, the pledgors made a tender in writing, which the referee found was valid, and, therefore, upon the refusal of the pledgees to accept, they were guilty of conversion, their lien was discharged, and thereafter they could only look to the personal responsibility of the pledgors for satisfaction for the debt. The referee could not lawfully deduct the amount of the debt from the amount of the damages, especially when no such demand was made in the answer."

The case was reversed and remanded, with directions to grant a new trial with leave to the parties to amend their pleadings, the opinion stating,

"We do not deem it necessary to pass upon  *  *  *  the measure of damages."

In the course of the opinion the court at page 15 of 10 Utah, 36 P. at page 205, said:

"It is clear that at common law the pledgee has merely a special property in the pledge, which gives him a right of possession, and a lien which may be extinguished by payment of the debt before valid sale, the same as payment of the mortgage debt on the law day extinguishes the mortgage. It follows, therefore, that a valid tender made by the pledgor at any time before sale will produce the same effect."

In *Musser* v. *McCornick*, supra, this court held that, as stated in the second syllabus, which reflects the opinion on the point:

"Though an unauthorized sale of pledge stock makes the pledgee liable for the full market or actual value of the stock  *  *  *  it does not defeat the lien of the pledgee, so that the pledgor can recover nothing if the value of the stock was less than the amount secured by the pledge."

A prior tender by the pledgor was not involved. In the course of the opinion, in distinguishing the case of *Hyams* v. *Bamberger*, supra, the court stated:

"Appellant's counsel cite and rely on *Hyams* v. *Bamberger*, 10 Utah 3, 36 P. 202, and other cases, as holding a contrary doctrine. In all of the cases, cited by counsel however, including the one from Utah, the pledgor had made a tender of the debt to the pledgee. Under such circumstances the law is well settled that a tender releases the pledged property. The pledgee may not refuse a legal tender of the amount due him and also retain a lien on the property. Such is not the case here. No tender or offer to pay the debt by Mr. Musser was ever made, and hence the property was not released from the lien.  *  *  *

"In view of the authorities, there is therefore no escape from the conclusion that under the undisputed facts of this case if Mr. Musser

had been personally obligated, he would not have been released, and hence it follows that his stock which was pledged was not released, and the district court committed no error in so ruling."

The case, therefore, holds that an unauthorized sale of the pledged property would not release the pledge since it would not release a surety, but concedes that a tender refused by the debtor would release the pledged property as it would a surety. That refusal of a valid tender, made after the debt is due, releases a surety is stated in 21 R. C. L. Sec. 90, p. 1046, to be a rule "well settled."

At page 1003, Sec. 52 of the same volume, under the heading

"Discharge of Surety as Release of Security Given by Him" it is said: "It may be stated as a rule of general application that where a person enters into an express contract of suretyship and as collateral security gives a mortgage on his real estate, any change in the suretyship contract that will discharge him will likewise discharge the security. Where the owner of property pledges it as security for the debt of another he is to be treated as standing in the relation of surety, and the fact that he does not pledge himself personally to pay the debt of his principal, but only pledges his property, makes no difference in the application of the principle that a material change in the contract between the principal and his creditor will operate to release the surety. Hence, the rule that if a person pledges his property as security for the performance of the contract of a third person, the property stands in the position of a surety, and any change in the contract which would have discharged a surety on the contract will discharge the property pledged as security."

Under the title "Pledge," 21 R. C. L., Sec. 42, p. 680, is found the following:

"The rule is settled in most jurisdictions that upon the tender of the amount of the debt for which property is pledged, either upon the day of the maturity of the debt, or thereafter before the property has been lawfully sold by the pledgee, the lien of the pledgee is destroyed, and an action will lie in favor of the pledgor against the pledgee if the latter refuses to deliver up the pledge, and it is usually held that it is not necessary that the pledgor should keep the tender good in order to maintain the action."

Defendant in the instant case takes the position that the rule that a tender releases a surety must be confined to cases where the tender is made by the principal, since where it is made by the one primarily obligated, its refusal damages the surety to the very extent of his obligation as surety. Had the tender been accepted, the debt being discharged, the surety's secondary obligation to pay is wiped out. The wrongful refusal should, therefore, as to the surety, effect the same result. But, it is argued, where tender is made by the surety such result should not follow. For, had it been accepted, the surety would have thereby assumed the performance of the principal's obligation. By the mere refusal of the tender of the surety the latter has not been damaged, because his obligations remaining after refusal is no more than it was before and in any eventuality he cannot be compelled to pay more than he tendered, the tender stopping interest and relieving him of costs.

However, the rule is stated by Brandt Suretyship & Guaranty, 3rd Ed., Vol. 1, Sec. 373, p. 714, to be to the contrary:

"So, also, if after the debt is due the surety offers to pay it and the creditor refuses to receive payment, the surety is discharged. In holding this the court said. 'If it is the legal right of the surety to pay the debt and at once proceed against the principal debtor, it necessarily follows that he is entitled to have the money accepted by the creditor in order that he may proceed. It is the duty of the creditor to receive it, and a gross violation of duty and good faith on his part to refuse, thereby interposing an insurmountable obstacle in the way of pursuit by the surety of his most prompt and efficient remedy.' " Citing *Hayes* v. *Josephi*, 26 Cal. 535. See, also, 21 R. C. L. Sec. 90, p. 1047; 50 C. J. p. 108, Sec. 184, and cases cited.

No reason is given by respondent for regarding a third party pledgor as being in a less favorable position than a surety in so far as concerns the effect of a valid tender by such surety or pledgor. And we feel that the rule quoted supra from Brandt on Suretyship better protects the rights of a surety and is more conducive to

the performance by a creditor of the duty owed such surety than its contrary.

Much is said in respondent's brief concerning the harshness of the rule adverted to in *Hyams* v. *Bamberger,* supra, that an unaccepted tender of the mortgage debt made on the "law day" discharges the mortgage lien, and in criticism of the rule in *Kortright* v. *Cady,* 21 N. Y. 343, 78 Am. Dec. 145, extending the principle of such rule to tender after default but before sale where a mortgage constitutes a mere lien rather than a conveyance of title defeasible by payment of the debt on the day stipulated. We need not, we think, enter into a discussion of the numerous cases which discuss and apply such rule, because, while the principles therein applied, especially in the cases last referred to, are analogous to cases involving tender by a pledgor-debtor, yet, here where the pledged property is that not of the debtor but of a third party, the law of suretyship might well be applied, though it were thought inequitable to hold the property of the mortgagor-debtor released by an unaccepted tender made by the debtor before sale. Cases dealing with the discharge of the mortgage lien are discussed in an excellent annotation to the case of *Hilmes* v. *Moon,* 168 Wash. 222, 11 P. 2d 253, 93 A. L. R. 1, at pages 12 to 81 of 93 A. L. R., to which the reader is referred for a discussion thereof.

Respondent argues that in order to discharge the lien the tender should have been kept good. As pointed out by the author of the annotation just cited, at pages 50, 51 thereof:

"It would seem that upon principle the doctrine as to the necessity of keeping a tender good and of paying the money into court has no application to a tender made for the purpose of discharging a mortgage lien. Such a tender would seem rightfully to present only two alternatives,—either the mortgage lien is immediately discharged, or else it remains unimpaired by the tender. This is shown by an examination into the practical effect of a holding requiring the tender to be kept good. The result of such a holding is that the lien cannot be regarded as discharged until some action has been brought arising out

of the debt or the mortgage and it is shown that the tender has been kept good and the money has been paid into court. But, if all these conditions must be fulfilled before the lien is discharged, the mortgagor might just as well disregard the tender and bring an action in equity to redeem or to compel the mortgagee to release the mortgage. For all practical purposes, therefore, it would seem that a holding that a tender must be kept good in order to have the effect of discharging a mortgage lien is the equivalent of a holding that the tender does not discharge the lien."

We are of the opinion that the principles enunciated in *Hyams* v. *Bamberger*, supra, at least in so far as applied to the case of tender by a third party pledgor, are valid and their application to the instant case equitable; viz., that such pledgor is to be regarded as in the situation of a surety, that the valid tender by her of the sum due on the obligation of the principal debtor discharged the pledge, and that defendant's subsequent dealing with her deposit constituted a conversion, making it liable for the value thereof.

Respondent's objection that such result departs from the rule that the measure of damages is recompense for injury suffered meets a twofold answer. First: If the acts of defendant amounted in law to a conversion, the measure of damages is as indicated. Second: The objection advanced could, with force of the same reasoning, be interposed to the claim of release by a surety, compelling him to show wherein he was injured by the action of the creditor which constituted a breach of the latter's duty to him. It would seem that such objection must rest upon the assumption that no change in the rights of the creditor was worked by the refusal of tender. Concluding, as we do, that the tender discharged the pledge, it is left only to determine whether the subsequent acts of the defendant amounted to a conversion, and if found to be such, to determine what damage resulted therefrom, rather than to inquire whether the pledgor is in a worse position than she would have been had the tender been accepted.

Two cases are cited by respondent as supporting its contention that in a suit for conversion of collateral pledged for another's debt the amount of the debt should be set off against the value of the collateral converted, which in the instant case would result in a cancellation of the ∎ damages. In *Meyers Bros. Drug Co.* v. *Matthews,* 69 Ark. 483, 64 S. W. 264, plaintiff gave her husband a note which she held in order that he might use it as collateral to secure a loan to himself, which he did. On plaintiff's suit to recover for conversion of such collateral by the pledgee it was held that the judgment should be reduced by the amount which the husband owed on the debt which the note was given to secure. No reason is given in the opinion for so holding. At page 266 of 64 S. W. the court stated:

"But, though appellee could sue before payment or tender, he is not released from the payment of his debt, to secure payment of which the Williams note was pledged."

The wife was the appellee. If the word "he" in the foregoing quotation refers to her, the answer to such statement might well be that it was not her debt. Nor is it entirely clear from the opinion whether the note pledged by the husband was pledged as his property or that of his wife, though the first syllabus stating that it was pledged by the husband as agent of the wife indicates the latter to be the fact. This fact might indeed be controlling. See *Bardsley* v. *First National Bank & Trust Co.,* 111 N. J. L. 512, 168 A. 665, 667, where the court in holding that plaintiff's securities pledged to secure the debt of the son of one of the plaintiffs were pledged by the son as pledgor and not by plaintiffs concluded:

"It follows * * * that appellants, in respect of these securities, did not have the status of sureties."

The second case cited, that of *Kegan* v. *Park Bank,* 320 Mo. 623, 8 S. W. 2d 858, 872, 15 S. W. 2d 333, seems fully to support respondent's contention. Plaintiff had pledged

collateral to secure the debt of his brother to the bank, he not being personally obligated on such debt. The court in allowing recoupment of the amount of the debt stated its reasons as follows:

"But it does not follow that the pledgor is wholly freed of his indirect or limited liability on the debt secured. The obligations of the pledgor and pledgee are reciprocal. It is the duty of the pledgee to return the collateral on payment of the principal debt, but it is equally the duty of the pledgor to satisfy the debt to obtain a return of the collateral. *Nevius* v. *Moore,* supra, 221 Mo. [330], loc. cit. 360, 361, 120 S. W. 43. The law does not treat the conversion of the pledged security as a destruction and annulment of the pledge contract, but regards it simply as a breach thereof. *Schaaf, Adm'r* v. *Fries,* supra, 90 Mo. App. [111], loc. cit. 116. Hence it is almost universally held that in the pledgor's suit for conversion the pledgee may recoup the amount of the principal debt. 21 R. C. L. §39, p. 677; 31 Cyc. p. 847.

"When the pledgor is directly bound on the principal debt and has put up collateral to secure his own obligation, the debt may be interposed by the pledgee as a counterclaim under the statute. Section 1233, R. S. Mo. 1919 [Mo. St. Ann. § 777, p. 1022]. *Hornsby & Monroe* v. *Knorpp,* 207 Mo. App. 302, 321, 232 S. W. 776. But where, as here, the pledgor has put up the collateral merely to secure the debt of some one else, the pledgee cannot, of course, counterclaim against the pledgor in the suit for conversion—for the principal debt is due from a third party—but he may recoup defensively as at common law for the amount thereof, not exceeding the value of the collateral. By the recoupment the pledgor's damages are held to the value of his interest in the collateral; that is to say, the value of the collateral minus the amount of the principal debt, if the former exceed the latter. 26 R. C. L. § 68, p. 1153; *Work* v. *Bennett,* 70 Pa. 484, 488, 489."

It is to be noted that the citations given in support of allowing recoupment are all—where the pledgor pledgee relationship is involved—cases where the pledgor was likewise the debtor and the question of whether a third party pledgee should be regarded as a surety is not discussed.

Respondent quoting from the case of *Union Mutual Life Ins. Company* v. *Union Mills Plaster Co.,* C. C., 37 F. 286, 290, 3 L. R. A. 90, contends that an unaccepted tender will not release the security unless the refusal is "unqualified,

and unaccompanied by any bona fide claim of right, which was supposed by the party to justify his refusal." Cases cited at page 67 of the annotation in 93 A. L. R. are also cited in support of such rule. The rule quoted from the Union Life Ins. case, supra, has been commented upon by the author of Hunt on Tender, at page 446, as follows:

> "But the doctrine here stated is too broad, the question of good faith is taken into consideration in most cases,, to determine whether some request on the part of the tenderee, such as requesting time to ascertain his rights, or whether costs have been incurred and the like, is, or is not put forward for the purpose of delay or to avoid accepting the tender."

We are of the opinion that the rule has no application to the case before us where the refusal was not conditional nor tentative, awaiting a decision as to whether the bank could accept with impunity, and where no offer to accept was subsequently made but the defendant relying on its judgment proceeded to dispose of the collateral as though no tender had been made.

It follows from what has been said that the trial court erred in directing a verdict for the defendant. Since, however, a new trial must be had there remains to dispose of one further question raised by appellant. It is contended that the trial court erred in rejecting proffered evidence of the plaintiff as to special damages. No purpose would be served in giving in detail the proffered testimony. No citation of authority is necessary to support the rule that special damages over and above the value of the converted property may properly be awarded where the circumstances are such as to warrant it. Suffice it to say that the proffered evidence here was not such as to show such circumstances. The evidence was properly excluded. Some ten pages of appellant's brief are devoted to the question of whether or not appellant was entitled to exemplary damages. No ruling on such question was made by the trial court, hence the question is not before us.

The judgment is reversed and the case remanded to the district court with instructions to grant a new trial.

MOFFAT, C. J., and WOLFE, LARSON, and PRATT, JJ., concur.