2003 UT App 417

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jamil K. CORBITT, Defendant and Appellant.**

**No. 20020375–CA.**

Court of Appeals of Utah.

Dec. 4, 2003.

Heather Johnson, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, Associate P.J., GREENWOOD, and ORME, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 Jamil Corbitt appeals from an order of restitution stemming from his conviction for possession of a stolen vehicle, a second degree felony, in violation of Utah Code Annotated section 41–1a–1316(2) (1998). We affirm.

## BACKGROUND

¶ 2 In January 2001, Roman and Francesca Lopez (the Lopezes) purchased a 1998 Dodge Dakota (the truck) from an auto dealership in Murray for $15,995.00. Concurrently, the Lopezes purchased a thirty-six month or 80,000 mile service contract for $1,999.00 and paid $1,123.92 for taxes and licensing fees. In total, the Lopezes paid $19,117.92. To finance the purchase, the Lopezes made a $500.00 down payment, traded in another vehicle for a net trade-in allowance of $1,475.00, and obtained a bank loan for the remaining balance of $17,142.92. The loan carried an annual interest rate of 16.6% and required monthly payments of $425.63 for sixty months.

¶ 3 About two weeks later, in February 2001, the truck was stolen from the Lopezes' residence. On the day of the theft, the Lopezes contacted police and their insurance company. The police listed the truck in the stolen vehicle database and began efforts to locate it. Ultimately, the insurance company took title to the truck and paid $12,489.10 to the Lopezes' lender. However, the Lopezes testified that they were still obligated to continue making monthly payments on the unpaid balance of their loan. Accordingly, the Lopezes made loan payments of $425.63 in both February and March 2001. By the time of the restitution hearing, the Lopezes testified they still owed $4,772.46 to the lender.

¶ 4 On April 16, 2001, during a traffic stop, a Salt Lake County Sheriff's deputy learned that Corbitt was driving the Lopezes' stolen truck. The State filed charges against Corbitt for illegal possession of a stolen vehicle. Corbitt admitted he knew the truck was stolen and pleaded guilty as charged.

¶ 5 As part of his sentence, the trial court ordered Corbitt to pay restitution to the Lopezes. Corbitt requested a restitution hearing. After the hearing, Corbitt was ordered to pay a total of $5,623.72 in restitution. At Corbitt's request, the trial court indicated on the record that $4,772.46 constituted "the difference between the price that was paid [for the truck] and what was paid to [the Lopezes] by [the] insurance company." The remaining $851.26 was for "the two [monthly loan] payments [the Lopezes] made while the [truck] was gone." The trial court issued written findings of fact and conclusions of law ordering Corbitt to pay the $5,623.72 in restitution in $150.00 monthly installment payments until the balance was repaid. Corbitt appeals.

## ISSUE AND STANDARD OF REVIEW

■■■ ¶ 6 Corbitt contends the trial court erred in ordering him to pay any restitution after the insurance company paid the Lopezes' claim. "Trial courts are vested with 'wide latitude and discretion in sentencing,' " *State v. Fedorowicz*, 2002 UT 67, ¶ 63, 52 P.3d 1194 (quoting *State v. Woodland*, 945 P.2d 665, 671 (Utah 1997)), and we " 'will not disturb a trial court's restitution order unless it exceeds that prescribed by law or otherwise abused its discretion.' " *State v. Mast*, 2001 UT App 402, ¶ 7, 40 P.3d 1143 (quoting *State v. Breeze*, 2001 UT App 200, ¶ 5, 29 P.3d 19). "[T]he exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable [person] would take the view adopted by the trial court." *State v. Gerrard*, 584 P.2d 885, 887 (Utah 1978).

## ANALYSIS

### I. Pecuniary Damages Under the Restitution Statute

■■ ¶ 7 First, Corbitt argues the trial court erred in concluding the Lopezes suf-fered pecuniary damages. Corbitt asserts that under Utah Code Annotated sections 77–38a–101 to –302 (Supp.2002) [1] (the restitution statute), any losses the Lopezes sustained are not "pecuniary damages" of the type required for a crime victim to receive restitution. *See id.* § 77–38a–102(6). Furthermore, Corbitt contends that any losses sustained by the Lopezes were not the result of Corbitt's admitted criminal conduct. *See id.* We disagree on both accounts.

¶ 8 The restitution statute provides:

"Pecuniary damages" means all special damages, but not general damages,[2] which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the money equivalent of property taken, destroyed, broken, or otherwise harmed, and losses including earnings and medical expenses.

*Id.*

■■ ¶ 9 "[T]he record in the case before us reflects that the State presented evidence which would support a civil conversion action against [Corbitt]," *State v. McBride*, 940 P.2d 539, 543 (Utah Ct.App.1997), as well as an award of damages from such an action. We have stated that generally, "the measure of damages in a conversion action is the value of the property at the time of the conversion, plus interest." *Jenkins v. Equipment Ctr., Inc.*, 869 P.2d 1000, 1004 (Utah Ct.App.1994). Further, "[t]he damages in an action for conversion are measured by the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong." *Id.* (quotations and citations omitted). Finally, "[t]he primary objective in rendering an award of damages for conversion is to award the injured party full compensation for actual losses." *Id.* (quotations and citations omitted). Hence, "rules relating to the measure of damages are flexible,

1. In 2002, the Utah Legislature amended and renumbered Utah Code Annotated section 76–3–201 (1999). These changes do not affect the substance of our analysis. Therefore, for convenience we cite to the current version of the statutes.

2. Corbitt does not assert that the Lopezes' losses are general damages of the type excluded from the restitution statute's definition of "pecuniary damages." *See* Utah Code Ann. § 77–38a–102(6) (Supp.2002).

and can be modified in the interest of fairness." *Id.* (quotations and citations omitted).

¶ 10 Corbitt argues that because the insurance company paid the Lopezes' claim, the Lopezes were "fully reimbursed" for all losses they sustained and thus did not suffer pecuniary damages. Therefore, Corbitt argues that the trial court's order of restitution "go[es] beyond the victims' pecuniary damages [in] violation of the restitution statute." In support of this argument, Corbitt relies on *State v. Twitchell,* 832 P.2d 866 (Utah Ct. App.1992). We think Corbitt misreads the *Twitchell* holding.

¶ 11 In *Twitchell,* the defendant admitted taking premium payments from his victims on nonexistent insurance policies. *See id.* at 867. However, the defendant argued that the misappropriated premium payments "did not represent ... actual loss[es] to the victims" because "he paid any claims victims made on the nonexistent policies and victims who had no claims were no more damaged than if they had been fully insured." *Id.* at 868. As such, the defendant argued the misappropriated premium payments could not be legally classified as "pecuniary damages" under the restitution statute. *Id.* We rejected this argument as "untenable" and held "[t]he [restitution] statute's definition of pecuniary damages includes the misappropriated policy payments ..., even though the victims were fortunate enough to suffer no major losses during the time they were uninsured." *Id.* at 869. Furthermore, "[the defendant] admitted in his plea agreement ... the very facts and elements necessary to prove liability in a civil proceeding for conversion." *Id.* at 870. As such, the losses created by the defendant's misappropriations in *Twitchell* constituted " 'special damages ..., which [the victims] could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities.' " *Id.* at 869 (quot-

ing Utah Code Ann. § 76–3–201(4)(b) (1990)). Based on this reasoning, we held the trial court did not abuse its discretion or exceed its legal authority by finding the victims' losses were " '[p]ecuniary damages' " under the restitution statute. *Id.* (quoting Utah Code Ann. § 76–3–201(4)(b) (1990)).

¶ 12 Similarly, in this case Corbitt contends that because the Lopezes received an insurance payment on their claim for the stolen truck, the Lopezes sustained no "actual loss" and therefore had no "pecuniary damages" as a result of Corbitt's criminal activity. Corbitt's argument parallels the defendant's "untenable" argument in *Twitchell, id.* 832 P.2d at 869, and we are equally unpersuaded. First, as in *Twitchell,* Corbitt admitted in his plea affidavit the elements necessary to prove a conversion claim. Second, notwithstanding any subsequent insurance payment on behalf of the Lopezes,[3] the fact remains that by Corbitt's admitted illegal possession of the stolen truck, Corbitt inflicted on the Lopezes "special damages ... includ[ing] the money equivalent of property taken ... and [other] losses," "which [the Lopezes] could recover against [Corbitt] in a civil action" for conversion. Utah Code Ann. § 77–38a–102(6) (Supp.2002). Hence, a plain reading of the restitution statute reveals that the Lopezes did suffer "pecuniary damages" as contemplated by the restitution statute. *See id.* Furthermore, by admitting his guilt on the charge of possessing a stolen vehicle, Corbitt "firmly established" his responsibility for the pecuniary damages resulting from his criminal conduct, *State v. Mast,* 2001 UT App 402, ¶ 13, 40 P.3d 1143 (quoting *State v. Watson,* 1999 UT App 273, ¶ 5, 987 P.2d 1289 (per curiam)), and he cannot now be heard to argue otherwise on appeal. Accordingly, we hold the trial court did not abuse its discretion or exceed its authority in determining the Lopezes sus-

---

3. By statute, the trial court is obligated to factor the insurance payment into *the determination of the amount of court-ordered restitution* that will be required of a defendant. *See* Utah Code Ann. § 77–38a–302(5)(c) (Supp.2002) ("In determining the monetary sum ... for court-ordered restitution, the court shall consider ... circumstances which the court determines may make restitution inappropriate."). However, evidence of insurance coverage should be included neither in the "pecuniary damages" determination, nor in the "complete restitution" determination because in making these determinations trial courts only look to whether or not the victim suffered damages as a result of the defendant's criminal conduct and, if so, how much. *Id.* §§ 77–38a–102(6), –302(2)(a), and –302(5)(c).

tained pecuniary damages caused by Corbitt's criminal activity for purposes of the restitution statute.[4]

## II. Amount of Restitution

¶ 13 Second, Corbitt argues the trial court erred in determining the monetary sum required for complete restitution. *See* Utah Code Ann. § 77–38a–302(2)(a) (Supp.2002) (defining complete restitution as the "restitution necessary to compensate a victim for all losses caused by the defendant").[5]

¶ 14 The restitution statute provides: "When a defendant is convicted of criminal activity that has resulted in pecuniary damages, in addition to any other sentence it may impose, the court *shall* order that the defendant make restitution to victims of crime...." *Id.* § 77–38a–302(1) (emphasis added). To determine "the monetary sum and other conditions for complete restitution" the trial court must consider, inter alia, "the cost of the damage or loss" to the victim as a result of the offense. *Id.* § 77–38a–302(5)(b). We also note that the well-settled remedial purpose of our restitution statute is "to compensate victims for the harm caused by a defendant and ... to spare victims the time, expense, and emotional difficulties of separate civil litigation to recover their damages from the defendant." *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996). Furthermore, as stated above, the measure of damages is flexible, allowing trial courts to fashion an equitable award to the victim. *See Jenkins*

*v. Equipment Ctr., Inc.,* 869 P.2d 1000, 1004 (Utah Ct.App.1994).

¶ 15 Corbitt argues the trial court erred in using the "purchase price" of the truck instead of the insurance company's valuation to determine the monetary amount required for complete restitution of the Lopezes' pecuniary damages. Stated another way, Corbitt contends he "is not responsible for the difference between the amount the Lopezes' paid for the [truck] and its actual value [as determined by the insurance company]." The appropriate measure of the loss or damage to a victim is fact-sensitive and will vary based on the facts of a particular case. In some cases, a purchase price may be appropriate to a determination of loss, in other cases it may not be appropriate. We think it unwise to adopt a black-letter rule that either always requires or never permits the use of purchase price or insurance settlement amount as valuation methods under the restitution statute. Here, the date of purchase and the date the car was stolen are only about two weeks apart; hence the use of purchase price in this case seems highly appropriate.

¶ 16 Furthermore, Utah law supports the use of purchase price as a property valuation method under the restitution statute. In *State v. McBride*, 940 P.2d 539 (Utah Ct.App. 1997), we faced a factual scenario somewhat similar to the one we face in this appeal.[6] Like the Lopezes in this case, the car-buyer in *McBride* financed the purchase of a vehicle by making a down payment and then signing a note for the balance of the pur-

---

4. Corbitt argues the trial court erred in requiring him to pay restitution for the service contract the Lopezes purchased with the truck, the cost of which was incorporated into the loan the Lopezes obtained to finance the purchase, because loss of the service contract "is not a loss attributable to ... Corbitt's crime." However, Corbitt cites no applicable authority that would indicate the cost of the service contract was not a pecuniary loss under the restitution statute. *See* Utah Code Ann. § 77–38a–102(6). Furthermore, the trial court determined that the remaining loan balance was the measure of the monetary amount required for complete restitution, not the costs of individual components of the Lopezes' purchase. For the reasons we articulate below, we refuse to alter the trial court's restitution order.

5. We note that the trial court properly considered Corbitt's testimony regarding his financial

resources, his ability to pay restitution, and other factors required by the restitution statute, *see id.* § 77–38a–302(5), before determining the amount of court-ordered restitution required of Corbitt.

6. The case differs from ours in that the defendant in *McBride* was challenging an order of restitution on the basis that intervening police negligence cut off any liability the defendant may have otherwise had to the victim. *See State v. McBride*, 940 P.2d 539, 542–45 (Utah Ct.App. 1997). Also, the victim in *McBride* was the seller who also financed the car-buyer's purchase. *See id.* at 540. However, because of the car-buyer's default, the seller was left with an unpaid loan and was thereby victimized in the same way the Lopezes were victimized in this case. *See id.* at 541.

chase price. *See id.* at 540. The victimized seller (the victim) retained the car's title to secure the note. *See id.* Thereafter, the vehicle was stolen. *See id.* Some weeks later, police stopped the defendant as he was driving the stolen vehicle and impounded the vehicle. *See id.* However, due to a transcribing error, neither the car-buyer nor the victim were notified by police that the vehicle had been recovered. *See id.* at 541. Unable to locate an owner, the impound lot finally sold the car. *See id.* Meanwhile, the car-buyer defaulted on the loan and the victim was unable to recover the vehicle. *See id.* The defendant was charged with receiving or transferring a stolen vehicle and later pleaded guilty to unlawful control over a vehicle. *See id.* After a restitution hearing, the trial court ordered the defendant to pay the remaining balance of the loan as restitution, *see id.,* just as did the trial court in this case. On appeal, we noted the defendant in *McBride* was liable to the victim in a civil action for conversion for pecuniary damages equaling the remaining loan amount on the vehicle. *See id.* at 543 (citing *Allred v. Hinkley,* 8 Utah 2d 73, 328 P.2d 726, 728 (1958)). We held that were it not for the defendant's criminal act, the victim's "loss would not have occurred." *Id.* at 544. Here, the truck was stolen only two weeks after it was purchased. The trial court was persuaded that the purchase price of the truck was a more accurate reflection of the fair market value than the insurance company's valuation given the short period of time between the purchase and the theft. Based on the deference we must accord the trial court, we hold the trial court did not abuse its discretion in granting the restitution ordered in this case.[7]

## CONCLUSION

¶ 17 The trial court did not abuse its discretion or exceed its legal authority in determining the Lopezes suffered pecuniary damages resulting from Corbitt's admitted criminal conduct. Further, the trial court did not abuse its discretion or exceed its legal authority in ordering the amount of restitution in this case. Accordingly, we affirm the order of restitution.

¶ 18 I CONCUR: PAMELA T. GREENWOOD, Judge.

ORME, Judge (concurring):

¶ 19 I concur fully in the court's opinion. I write separately only to highlight the incorrect use of legal terminology in the statute. I do so in the hope the controlling language of the statute will be corrected. That failing, I hope to make a record of the incorrect usage so that the peculiar meaning of the terms "special damages" and "general damages" as used in the restitution statute will not muddy the meaning of those terms in other contexts.

¶ 20 Our restitution statute says that the "[p]ecuniary damages" that can be awarded are "all special damages, but not general damages." Utah Code Ann. § 77–38a–102(6) (Supp.2002). The difference between general damages and special damages is succinctly explained by Professor Dan B. Dobbs in these terms:

> Special damages include items of loss that are more or less peculiar to the particular plaintiff and would not be expected to occur regularly to other plaintiffs in similar circumstances. General damages, on the other hand, are damages that courts believe "generally" flow from the kind of substantive wrong done by the defendant.
>
> . . . .
>
> . . . . The distinction between general damages on the one hand and special damages on the other hand is quite important

---

7. The State contends the trial court "forgot to take into account the trade-in allowance and down payment" and thereby "incorrectly calculated" the amount of restitution Corbitt should pay. The State urges us to either modify the order of restitution to remedy this "clerical mistake," or remand with instructions that the trial court "recalculate the restitution amount." We decline. The record indicates the trial court had before it evidence of the trade-in allowance and down payment, as well as evidence of the remaining balance on the Lopezes' loan. In light of the trial court's wide discretion in sentencing, the absence of any evidence showing the trial court miscalculated the amount of restitution, and the trial court's clear intentions as evidenced by the written findings of facts and conclusions of law, we leave undisturbed the amount of restitution provided in the restitution order.

for practical reasons. Courts are quite willing to award general damages but quite reluctant to award special damages.

Dan B. Dobbs, Handbook on the Law of Remedies § 3.2, at 138–39 (West 1973). Dobbs goes on to explain that two particular limitations combine to restrict or preclude the availability of special damages. "The first is that special damages must be proved to a reasonable certainty.... The second ... is that no special damages are recoverable if they are deemed remote." *Id.* § 3.2, at 139. In tort cases, remoteness is addressed as an aspect of proximate cause. *See id.* If special damages are disallowed in a tort case, the court will

> say that the defendant's tort was not a proximate cause of the plaintiff's damages. In a contract case a very similar idea will be expressed by saying that the damages claimed by the plaintiff as a result of the defendant's breach were not within the contemplation of the parties when the contract was made, and therefore are not recoverable.

*Id.*

¶ 21 This concept is, quite literally, "hornbook law," and Utah unquestionably adheres to these settled precepts—at least outside the context of criminal restitution. *See Castillo v. Atlanta Cas. Co.,* 939 P.2d 1204, 1209 (Utah Ct.App.) (stating that plaintiffs in contract actions can recover "general damages, which flow naturally from the breach, and consequential damages,[1] which, while not an invariable result of breach, were reasonably foreseeable by the parties at the time the contract was entered into"), *cert. denied,* 945

P.2d 1118 (Utah 1997); *Cohn v. J.C. Penney Co.,* 537 P.2d 306, 307 (Utah 1975) ("General damages are those which naturally and necessarily result from the harm done. They are damages which everybody knows are likely to result from the harm described and so are said to be implied in law. Special damages are those which occur as a natural consequence of the harm done but are not so certain to flow therefrom as to be implied in law. One claiming them must plead them so as to let his adversary know what will be involved.").[2]

¶ 22 Lawyers will recall the application of these principles in cases considered at length in the first year of law school. Thus, Mr. Baxendale was not liable to Mr. Hadley for the profits Hadley lost when his mill was shut down longer than necessary because Baxendale was remiss in delivering a part. *See Hadley v. Baxendale,* 156 Eng. Rep. 145, 151 (Exch.1854). It was held that

> such loss would neither have flowed naturally from the breach of this contract in the great multitude of such cases occurring under ordinary circumstances, nor were the special circumstances, which, perhaps, would have made it a reasonable and natural consequence of such breach of contract, communicated to or known by the defendants.

*Id.* Similarly, a tortfeasor may be liable to the owner of a house if a fire he starts while negligently working therein or nearby destroys the house, but he may not be liable to the owner of a distant house to which the fire spreads. *See generally Ryan v. New York Cen. R.R. Co.,* 35 N.Y. 210, 216–17 (1866). *But see Milwaukee & Saint Paul Ry. Co. v.*

---

1. "Special damages" and "consequential damages" are synonymous. *See Marquette Cement Mfg. Co. v. Louisville & Nashville R.R. Co.,* 281 F.Supp. 944, 948, 950 (E.D.Tenn.1967), *aff'd,* 406 F.2d 731 (6th Cir.1969).

2. The Court in *Cohn* offered this tort example:

   Plaintiff sues defendant for blowing up his dam in the river and claims damages in the amount of $5,000. His proof shows the cost of repairs to the dam to be $1,000. He offers evidence to the effect that he had a water mill which had to be shut down for two months during the rebuilding of the dam and that he lost profits in the amount of $4,000 as a result thereof. The rebuilding of the dam is an item of general damages, but the loss of profits due to inopera-

   tion of the mill is an item of special damage because it is peculiar to his case. Another man might have his dam blown up and might not even own a mill, or it might not be operative. Still another man might have special damages because he could not irrigate his farm as a result of the destruction of the dam which he owned and the lowering of the water below the bottom of his lateral ditch. Each dam owner would need to set forth his particular special damages because such special damages do not of necessity follow as a result of the tort.

   *Cohn v. J.C. Penney Co.,* 537 P.2d 306, 307 (Utah 1975).

*Kellogg*, 94 U.S. 469, 474–75, 24 L.Ed. 256 (1876).

¶ 23 What is the practical distinction between special and general damages? Dobbs gives this example: If through negligence, plaintiff's land is flooded, the measure of general damages will typically be the amount by which the value of the land was diminished. *See* Dobbs, Handbook on the Law of Remedies § 3.2, at 139. Plaintiff might also have a claim for special damages. "For example, the flooding might have led to mosquitoes that caused the plaintiff to contract disease. If this could be proven, the landowner might reasonably assert a claim for both general damages and special damages." *Id.*

¶ 24 In the case of conversion, the tort most closely paralleling the crime in this case, the measure of general damages is "the value of the chattel at the time and place of conversion, usually with interest from that time." *Id.* § 5.14, at 403 (footnote omitted). *Accord Jenkins v. Equipment Ctr., Inc.*, 869 P.2d 1000, 1004 (Utah Ct.App.1994) (noting that "the measure of damages in a conversion action is the value of the property at the time of the conversion, plus interest"). Potential special damages for conversion include "damages for loss of use of the converted article," Dobbs, Handbook on the Law of Remedies § 5.14, at 408, and "expenses of pursuing the converted property." *Id.* § 5.14, at 410. *See Lilenquist v. Utah State Nat'l Bank*, 99 Utah 163, 100 P.2d 185, 190 (1940) (noting that "special damages over and above the value of the converted property may properly be awarded where the circumstances are such as to warrant it"). Accordingly, in *Henderson v. For–Shor Co.*, 757 P.2d 465 (Utah Ct.App.1988), we noted that

"[s]pecial damages may be recovered in an action for conversion for any injury proximately resulting from the conversion. Damages flowing from the conversion which are not ordinary, usual, or commonly to be expected, are recoverable if, under the circumstances, it can be fairly said that both parties have these consequences in contemplation at the time of the wrong complained of, as the probable result thereof, and if these unusual consequences are neither uncertain, unnatural, nor remote as to cause, nor speculative and conjectural in effect. Thus, compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered. The owner may also recover special damages resulting from the withholding of the property."

*Id.* at 469–70 (quoting 18 Am.Jur.2d *Conversion* § 117 (1985)).

¶ 25 What does all this mean in cases like the instant one? Under a plain reading of the restitution statute, which is the approach we are obligated to employ, *see State v. Westerman*, 945 P.2d 695, 696 (Utah Ct.App. 1997), the result is a bizarre one: The victims of a criminal conversion of their automobile may not recover general damages, the value of their vehicle at the time and place of conversion, but they are entitled to their special damages. *See* Utah Code Ann. § 77–38a–102(6) (Supp.2002) (" 'Pecuniary damages' means all special damages, but not general damages, which a person could recover against the defendant in a civil action[.]"). Thus, while they could not recover the value of their lost vehicle, they could recover the cost of renting substitute transportation or cab and bus fare, the expenses of hiring a private investigator to find the car, and the profits lost if the car was used on a newspaper delivery route or by a traveling salesman. Such an approach inverts the usual hierarchy of the law whereby the more certain general damages are readily available while the less automatic, more speculative special damages are tougher to recover. *See* Dobbs, Handbook on the Law of Remedies § 3.2, at 139 ("Courts are quite willing to award general damages but quite reluctant to award special damages."); Utah R. Civ. P. 9 (The same pleading rule requiring, in subsection (b), that fraud be pleaded "with particularity" also requires, in subsection (g), that "[w]hen items of special damage are claimed, they shall be specifically stated.").

¶ 26 Uncharacteristically, Utah appellate courts have ignored the plain language of the statute and done what the Legislature probably really intended. Thus, we pay lip service to the fact that the statute equates pecuniary

damages with special damages and excludes any recovery for general damages but then go on to affirm awards of what are clearly general damages. *See, e.g., State v. McBride,* 940 P.2d 539, 545 (Utah Ct.App.) (holding "the trial court correctly ordered appellant to pay restitution for the full value of the vehicle"), *cert. denied,* 953 P.2d 449 (Utah 1997); *State v. Twitchell,* 832 P.2d 866, 870 (Utah Ct.App.1992) (affirming restitution award on conversion theory "[b]ecause the measure of damages in a conversion case is the full value of the converted property"). The main opinion in this case finesses the problem, while affirming a restitution award that unmistakenly includes general damages, by observing in footnote 2 that "Corbitt does not assert the Lopezes' losses are general damages of the type excluded from the restitution statute[ ]."

¶ 27 The mistaken exclusion of all general damages from the definition of pecuniary damages as used in the restitution statute is no doubt attributable to the Legislature's desire to exclude pain and suffering, diminished reputation, and other less tangible elements of damage from the scope of restitution orders. As explained by Dobbs,

> there is one special and entirely different use of the term "general damages[,"] that should be distinguished. In the case of certain dignitary invasions, such as libels, invasions of privacy, assaults, alienation of affections, and the like, the injury done is often not an economic one at all but substantial damages are allowed nevertheless. These are called general damages, to distinguish them from proof of actual economic harm and from punitive damages. In the dignitary cases, then, the term "general damages" does not refer to a *measure* at all; it merely refers to damages awarded for the affront to the plaintiff's dignity and the emotional harm done. In all other cases, the term "general damages" is a measure or yardstick, and it can be applied to the facts of the case to determine the actual amount of money that should be awarded.

Dobbs, Handbook on the Law of Remedies § 3.2, at 139 (emphasis in original; footnote omitted).

¶ 28 The practical approach employed by Utah appellate courts has been to limit, albeit sub silentio, the general damages exclusion in the restitution statute to what Dobbs characterizes as "dignitary invasions," while at the same time effectively ignoring the statute's definition of pecuniary damages as dovetailing with special damages, and instead just focusing on demonstrable pecuniary loss, or what Dobbs refers to as "actual economic harm." *Id.* I think this approach advances the Legislature's intent in the broad sense, but it is very much at odds with our oft-repeated objective to interpret statutes in accordance with the plain meaning of the words used. As such, I find the approach to be somewhat uncomfortable.[3] Perhaps it will be less so if we are perfectly candid about what we are doing pending the Legislature's opportunity to adjust the statute.

---

**3.** "The writer is reminded of Lincoln's observation that calling a horse's tail a leg does not make it a leg." *Boards of Educ. v. Salt Lake County Comm'n,* 749 P.2d 1264, 1271 n. 2 (Utah 1988) (Howe, J., concurring & dissenting).