DeFUSION COMPANY, a Utah nonprofit membership Corporation operating as D. B. Cooper's Club, Plaintiff,

v.

UTAH LIQUOR CONTROL COMMISSION, Defendant.

No. 16368.

Supreme Court of Utah.

June 10, 1980.

James S. Lowrie and Robyn O. Heilbrun, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., John McAllister, Asst. Atty. Gen., Salt Lake City, for defendant.

CROFT, District Judge.

This case is before the court on appeal by plaintiff from an order entered on March 7, 1979, by defendant suspending plaintiff's state liquor store and consumption licenses for one week.

Plaintiff operates a private club in Salt Lake City, Utah, as a non-profit corporation organized under the laws of the state of Utah,[1] and as such is licensed by defendant to store, serve, consume and sell liquor from the state liquor store located on its premises.

The event out of which this case arose occurred on September 12, 1978, when Patricia Hall and Brenda Bowen, agents of the State Division of Narcotics and Liquor Law Enforcement, went to plaintiff's club, entered without challenge or any request to show membership or guest cards and took seats in the dining area of the club where a waitress advised them that the dining area was closed and that if they wanted drinks, they should move to the bar area of the club. They did so and after a brief period, a waitress approached and Brenda Bowen asked if they could have "two screwdrivers." The waitress asked if it would be cash, an affirmative reply was given and a $5.00 bill was shown. In about five minutes the waitress, identified as Bonnie, returned with two drinks and was paid for them. Samples of the two drinks were placed in vials by the agents, carried out with them, and were later placed in the evidence locker

when the agents returned to their office. While at the club no one asked the agents if they were members or had guest cards. The agents left the club without identifying themselves to any club personnel or disclosing that an alleged violation had occurred.

The next day plaintiff indirectly learned of the alleged violation from the executive director of the Utah Licensed Club Association who had learned of it while at the Commission office that day. That evening two other agents appeared at plaintiff's club, identifying themselves as such, to determine the identity of the waitress. On September 14, 1978, plaintiff's counsel hand delivered a letter to the Commission requesting a viewing by the waitress of the agents involved in the incident. The request went without response. On October 27, 1978, the supervisor of licensing and compliance for the Commission sent a letter to plaintiff advising the Commission had received notification from the enforcement division of an alleged violation of the liquor laws at the club on September 12, 1978. It gave notice that a hearing would be held at the Commission office on November 15, 1978.

The letter outlined the details of the alleged violation and stated that said violation related to Sections 16-6-13.1(9) and 16-6-13.7(2), (3) U.C.A.1953, as amended, and to Rules and Regulations A96-01-5(6)(a), the latter of which provided that:

> No person shall be granted the use of the premises of a locker club except members, guests and visitors.

The letter stated the Commission's position was that serving and selling an alcoholic beverage to a Commission agent when that agent was not a bona fide club member, guest or visitor may be a violation of the stated statutes and rule.

The hearing was held before Commission Chairman J. P. O'Keefe as hearing officer. Following the hearing Mr. O'Keefe submitted his findings and conclusions (dated November 28, 1978) to the Commission and

1. U.C.A.1953, Title 16, Chapter 6, Article 1.

recommended a two-week suspension. These included findings relating to the sale of the "screwdriver" drinks to the agents and a conclusion that violations of Sections 16–6–13.1(9), 16–6–13.7(2) and (3) of the code and of Section A96–01–5(6)(a) of the Commission's regulations had occurred in that

. . . there was an entry by, and sale to, a non-member of the club.

The findings, conclusions and recommendation were considered at subsequent meetings of the Commission, but final action was not taken until the Commission meeting of March 7, 1979, when a written order was entered finding that a violation of the Liquor Control Act did occur and ordering that the state liquor store and consumption licenses issued to plaintiff be suspended for one week. This order did not otherwise specifically identify the violation found to have occurred.

However, we note that Sections 16–6–13.-7(2) and (3) relate only to how a person may apply for and obtain a membership in such a club, and have no application to the violation of September 12, 1978. The Commission's letter of October 17, 1978, upon which the hearing was based had summarized the facts relating to the sale of the "screwdriver" drinks to the two agents, but ·had set forth no facts upon which any violation of these two statutes could be based.

The Commission's letter related the facts of the sale to a violation of Section 16–6–13.1(9) of the code and the regulation set forth above.[2] That statute provides that:

No person other than a member or guest who holds a valid guest card issued pursuant to the provisions of subsection 16–6–13.7(13) may make any purchase from a state store located on the premises of a social club.

Subsection 13.7(13) sets forth one of the conditions a licensee agrees to, namely, that the licensee will limit the issuance of guest cards for a period not to exceed two weeks and collect a fee for each guest of not less than $5 for each two-week period the guest card is issued, with the proviso that this condition shall be applicable only with respect to guests who purchase alcoholic beverages at the club.

Subsection 13.1(9) does not restrict non-members or persons having no guest card from coming ·onto the club premises, but rather proscribes such persons from making any purchase from the state store. Another condition and requirement imposed upon a licensee by the law is that the licensee shall allow guests to use the premises only when they have been previously authorized by a member.[3] Failure on the part of the licensee, club officers, managing agent, members or employees to adhere to these conditions constitute grounds for the suspension or revocation of any license issued under these laws.[4]

Plaintiff contends that Section 16–6–13.-1(9) does not proscribe the *sale* at the club to one not a member or holding a valid guest card, but only proscribes the *purchase* by such person from the state liquor store, and thus alleges the Commission erroneously found this section to apply to plaintiff as licensee. We are here concerned with whether a violation of the law occurred upon which a suspension of license might be based. Subsection 8(d)(iv) of Section 13.1 provides that:

No vendor, officer, director, managing agent or employee . . . shall sell, deliver, or furnish, or cause or permit to be sold, delivered or furnished, any liquor or wine to:

\* \* \* \* \* \*

(iv) any known interdicted person.

---

**2.** As to the Commission's finding that regulation A96–01–05(6)(a) was violated, it is noted as stated supra that this regulation provides that no person shall be granted use of the premises of a locker club except "members, guests and visitors." The record before us does not distinguish between "guest" and "visi-

tor" and thus the violation of this regulation, so found by the Commission, is not apparent on the record.

**3.** U.C.A.1953, 16–6–13.7(10).

**4.** U.C.A.1953, 16–6–13.7 (last paragraph).

■ A person who is not a member or who does not hold a valid guest card is an "interdicted person" with respect to alcoholic drinks in the club. Thus, the sale of liquor to such a person, as well as the purchase from the liquor store by such person, is proscribed by the statutes.

■ Plaintiff also contends that the entry of the agents into the club was an unconstitutional warrantless search. In so contending plaintiff closes its eyes to the realities of the situation. We are not here involved with the agents going to the club under their statutory authority which, upon a presentation of credentials, they can inspect "completely the entire club house, club quarters, and all the books and records of the licensee."[5] Rather they went there on a routine, periodic visit to determine whether or not the club would allow them as non-members, or non-card holding guests, to enter and make a purchase from the state liquor store located on the premises in.violation of the law.[6] Their unchallenged entry was not a "warrantless search." Nor did it become so by their purchase of any alcoholic drink.

■ Under the Liquor Control Act, the Liquor Control Commission has the duty to control the sale of alcoholic beverages,[7] and, subject to limitations prescribed by law, generally to do all such things as are deemed necessary or advisable by the Commission for carrying into effect the provisions of that act and the regulations.[8] It is not unreasonable for the Commission to have its agents make periodic checks of private clubs to determine if they are adhering to the law. Indeed, if they did not do so, illegal sales of alcoholic beverages would go unchecked. If agents were required to identify themselves as such and show their credentials upon entering a private club, their intended purpose would inevitably become fruitless. They did no more than any non-member holding no guest card might have done.

The record shows that during the year preceding the occurrence of September 12, 1978, the plaintiff's club had been similarly checked by liquor control agents on at least twelve occasions with one other non-member violation being noted. Plaintiff contends that this number of visits was unreasonable and that plaintiff should not be punished because on this one occasion an employee failed to request identification. A periodic check once a month is not unreasonable.

■ The conditions under which private clubs must operate are clearly set forth in the statutes and failure on the part of any licensee, or any of its employees, to adhere to the conditions constitute grounds for suspension of a license.[9] Suspension is not premised on repeated violations and if one such violation occurs, it is a basis for action by the Commission.

Plaintiff further contends that there was no evidence at the hearing that the beverage purchased by the agents contained alcohol. A review of the transcript of the hearing supports that contention. The testimony established only that two "screwdriver" drinks were obtained. No evidence was offered at the hearing as to the contents of a "screwdriver" drink as served at plaintiff's club. As previously noted, samples of the drinks served were taken by the agents. These samples were placed in vials and transferred to the evidence locker at the Commission office. The findings of the hearing officer stated that these samples were referred to the state toxicologist for analysis, although none of the testimony at the hearing nor any part of the record before us supports that finding.

■ The question is thus presented as to whether or not the testimony of the agents that they ordered and were served two "screwdrivers" constitutes sufficient evidence of a violation to support the finding

---

5. U.C.A.1953, 16–6–13.7(9).

6. U.C.A.1953, 16–6–13.1(9).

7. U.C.A.1953, 32–1–6(c).

8. U.C.A.1953, 32–1–6(i).

9. U.C.A.1953, 16–6–13.7.

that a violation occurred. Section 32–1–32.- 2(d) provides that technical rules of evidence need not be applied in the conduct of hearings before the Commission. But this statute does not exclude the necessity of proving the violation. To establish a violation, proof must be made that a non-member or a person not holding a valid guest card made a purchase from the state liquor store at the club of an alcoholic beverage.[10]

The Liquor Control Act defines a "state store" as meaning an outlet for the sale of "liquor" on the premises. It defines "alcoholic beverage" to mean "liquor" and defines "liquor" as any drink containing more than one-half of one per centum of alcohol by weight.[11] To support the Commission's finding that a violation occurred in this case, we think the evidence must show that a "screwdriver" drink falls within the statutory definitions of "alcoholic beverage" and "liquor." With no evidence having been offered as to what goes into a "screwdriver" drink, nor as to what the alcoholic content was in the drinks served to the agents, proof of the violation would, of necessity, have to be based upon a conclusion that the Commission and this Court can take judicial notice that a "screwdriver" drink is an "alcoholic beverage" as defined in the act. Evidence which was available to otherwise prove that fact was left in the evidence locker.

In 11 A.L.R. 1233, an annotation on the, "test of intoxicating character of liquor," it is stated at page 1234 that

> Courts will not take judicial notice, from the fact alone that whiskey in some amount is in a certain compound, that such compound or liquid is necessarily intoxicating, or that it contains more than one-half of one percent of alcohol by volume.

■ In a supplemental annotation in 49 A.L.R.2d 764 relating to judicial notice of the intoxicating quality of a liquor, or particular liquid, from its name, it is said that generally speaking, matters of judicial notice have three material requisites: (1) the matter must be a matter of common and general knowledge; (2) it must be well and authoritatively settled and not doubtful or uncertain; and (3) it must be known to be within the limits of the jurisdiction of the court. It further states:

> Matters of which the court will take notice are necessarily uniform or fixed and do not depend upon uncertain testimony, for as soon as a matter becomes disputable it ceases to fall under the head of common knowledge and so will not be judicially recognized.
>
> It is to be kept in mind that judicial notice in any particular case is not determined or limited by actual knowledge of the individual judge or court. There is a basic distinction between judicial notice and judicial knowledge, where the latter term is used to indicate the individual knowledge of a fact not generally known, in which case the rule of judicial notice will be inapplicable . . . .

The annotation points out that courts uniformly take judicial notice of the intoxicating nature of alcohol, whiskey, gin, ale, wine and rum, but not necessarily so as to "malt liquor" and "beer" because of the varying percentages of alcohol in such drinks. At page 791 it is stated

> The court would not take judicial notice of the intoxicating character of liquids which were concoctions which were . . . beverages of unknown alcoholic content.

Rule 12(3) of the Rules of Evidence provides that a reviewing court in its discretion may take judicial notice of any matter specified in Rule 9. That rule provides that, among other things, judicial notice may be taken of "(d) such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute, and (e) specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy."

■ As noted, our statutes do not define "liquor" or "alcoholic beverage" in terms of

---

**10.** U.C.A.1953, 16–6–13.1(9) and 16–6–13.7(13).

**11.** U.C.A.1953, 32–1–3.

intoxicating qualities or characteristics, but rather in terms of percentage of alcoholic content by weight.[12] We do not believe that the alcoholic content of a "screwdriver" drink served at plaintiff's club is a fact about which either the Commission or this Court may take judicial notice. Having so concluded, we find the evidence presented at the hearing falls short of proving the violation alleged to have occurred.

Having so concluded, other points raised by plaintiff on this appeal not discussed herein need not be further considered.

The order of the Commission suspending plaintiff's licenses is vacated and the case is dismissed.

CROCKETT, C. J., and WILKINS, MAUGHAN and HALL, JJ., concur.

STEWART, Justice, having disqualified himself, does not participate herein.

---

12. We so state in awareness of section 32–8–35, U.C.A.1953, which provides: "The court shall, in the absence of proof to the contrary, be at liberty to infer that the alcoholic beverage in question is intoxicating from the fact that a witness describes it as intoxicating, or by a name which is commonly applied to an intoxicating liquor." In this case, no evidence was presented as to the intoxicating nature of the drinks served.