**2017 UT App 147**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LANE D. BIRD,
Appellant.

Opinion
No. 20140434-CA
Filed August 10, 2017

Second District Court, Farmington Department
The Honorable Michael G. Allphin
No. 111700523

Derek G. Williams, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

POHLMAN, Judge:

¶1     Lane D. Bird appeals a restitution order, arguing that the
trial court erred when calculating the restitution amount. We
affirm.

---

1. Judge Stephen L. Roth participated in this case as a member of
the Utah Court of Appeals. He retired from the court before this
decision issued.

BACKGROUND

¶2    After creating a skin care product and establishing a company to manufacture it, Omar Bonada arranged for Bird to help distribute the product. Eventually, Bonada and Bird together decided to dissolve Bonada's company and incorporate two companies in its place: Clarcon Labs Inc. and Clarcon Distribution Inc. (collectively, Clarcon).

¶3    In early 2007, Bird approached his neighbor (Neighbor) and his wife (collectively, Victims) about an investment opportunity in Clarcon. By March 2007, Bird had convinced Victims to invest a total of $247,000. In exchange for this capital investment, Victims would acquire stock in Clarcon and thereby receive a share of future profits.

¶4    In convincing Victims to invest in Clarcon, Bird omitted many material facts and made numerous untrue statements. For example, Bird did not tell Victims about any of Clarcon's debts, and he did not disclose that he had prior tax liens and civil judgment liens against him, or that he had received two prior discharges in bankruptcy. Bird also falsely claimed that he had invested $500,000 of his own money in Clarcon so that Victims would feel like Bird had "skin in the game."

¶5    Bird also led Victims to believe that their capital investment would be used to update production equipment to support the company's growth. Instead, a large portion of Victims' $247,000 investment was used to pay debts and salaries while another portion was transferred to Powerslide, another of Bird's business ventures, purportedly to repay a loan from Powerslide. On June 1, 2007, shortly after Neighbor and Bonada discovered the funds transfer to Powerslide, Clarcon terminated Bird's involvement in the company.

¶6    After Bird left, Clarcon was dissolved and Neighbor and Bonada formed a new company, Clarcon Biological Chemistry

Laboratory Inc. (CBCL), to produce and market the same product. When CBCL gained access to Clarcon's financial records, Neighbor discovered that Clarcon was mired in debt. It had high overhead expenses and "[v]irtually nothing in sales."[2] Over the next two years, Victims tried to make CBCL succeed and invested another $193,000 into the venture. Notwithstanding those efforts, CBCL never made a profit. And eventually, the Food and Drug Administration (the FDA) found CBCL's product to be contaminated with bacteria, which led to federal authorities recalling and seizing the product inventory in the summer of 2009. Neighbor and Bonada dissolved CBCL shortly thereafter.

¶7    In 2011, Bird was charged with securities fraud and theft. After a bench trial, the trial court acquitted Bird of theft but found him guilty of securities fraud, a second degree felony. The trial court fined Bird $10,000 and ordered him to serve one to fifteen years in prison, but it suspended both the fine and the prison term. The court then sentenced Bird to 180 days in jail and placed him on probation.

¶8    As a condition of probation, the trial court ordered Bird to pay restitution to Victims. The State requested complete and court-ordered restitution[3] in the amount of $247,000, which

---

2. Victims had expected to receive a share of Clarcon's future profits, but they received only one check for $1,100.

3. Under the Crime Victims Restitution Act, there is a distinction between complete and court-ordered restitution. Complete restitution is the amount of "restitution necessary to compensate a victim for all losses caused by the defendant," Utah Code Ann. § 77-38a-302(2)(a) (LexisNexis Supp. 2016), whereas court-ordered restitution is "the restitution the court having criminal jurisdiction orders the defendant to pay," *id.* § 77-38a-302(2)(b).

represented Victims' original investment in Clarcon. Bird objected, arguing that "no restitution [should] be ordered as [Victims] have not suffered an actual loss" resulting from Bird's criminal activities. Victims suffered no pecuniary damages, Bird argued, because Neighbor retained Clarcon's product inventory and fixed assets that together exceeded the value of Victims' principal investment. In his objection, Bird urged the court to rely on his supporting documents and the testimony at trial in considering his objection. He did not request a hearing on the matter.

¶9　Without further proceedings, the trial court issued a written ruling and order on the State's request for restitution. In its ruling, the court found that Victims had "relied on [Bird's] representations and invested a principal sum of $247,000" in Clarcon, on which they "did not receive a return." The court concluded that they would not have suffered pecuniary damages but for Bird's criminal conduct and that their damages "have a sufficient causal nexus in fact and in time with [Bird's] securities fraud." The court further found, however, that Bird had presented undisputed evidence that Neighbor "absorbed all of the assets of Clarcon . . . when forming" CBCL and that those assets had a total estimated value of $82,276.83.[4] Because the State had not presented any contrary evidence, the court credited the value of the assets against the amount of Victims' principal investment.

¶10　The court next addressed Bird's attempt to seek further credit against the amount of Victims' principal investment based on the value of the product inventory. Bird estimated the product inventory "as having a value into the millions of

---

4. These assets included items such as labelers, drill presses, a greenhouse, machinery, raw ingredients, desks, computers, and office/lab equipment.

dollars." Although Neighbor testified at trial, based on what he was told by Bird, that the estimated retail value of the product inventory was $1.5 million to $2 million in the spring of 2007, other witnesses testified that the product inventory had a retail value of $500,000 at that time. But because federal authorities seized the product inventory in 2009 due to safety concerns, the court found that the product inventory was "valueless." As a result, the court declined to credit the product inventory against the principal investment.

¶11    The court ordered Bird to pay $164,723.17 as complete and court-ordered restitution. This amount represented Victims' pecuniary damages resulting from Bird's criminal activities. The court reached this amount by subtracting the value of the fixed assets ($82,276.83) from the value of Victims' principal investment ($247,000).

¶12    After engaging new counsel, Bird filed a motion to amend the court's restitution order. With regard to his request for a credit related to the product inventory, Bird argued that the seizure of the inventory, two years after he left Clarcon, was "based on intervening actions or omissions attributable to [Neighbor and] should not be utilized to support denial of such credit." According to Bird, there was "a clear break in the 'causal nexus' since [Neighbor] was capable of liquidating the assets of the Company upon dissolution and termination of Bird." He argued that because Neighbor's "determination to continue operating and eventually having the products seized does not support liability for Bird," Neighbor's retention of the product inventory fully "offsets the $164,723.17 ordered for restitution." Bird requested that the court either amend the restitution order to direct no restitution be paid to Victims or reopen the matter with an evidentiary hearing.

¶13    The court declined to reassess its prior ruling and denied Bird's motion to amend. Bird now appeals.

ISSUES AND STANDARDS OF REVIEW

¶14    Bird challenges the restitution order, contending that the trial court "failed to take into consideration the product inventory of the Company as an off-set to the restitution." "Trial courts are vested with wide latitude and discretion in sentencing." *State v. Fedorowicz*, 2002 UT 67, ¶ 63, 52 P.3d 1194 (citation and internal quotation marks omitted). This court "will not disturb a trial court's restitution order unless it exceeds that prescribed by law or [the trial court] otherwise abused its discretion." *State v. Corbitt*, 2003 UT App 417, ¶ 6, 82 P.3d 211 (citation and internal quotation marks omitted). A trial court will be deemed to have exceeded its discretion "only if it can be said that no reasonable [person] would take the view adopted by the trial court." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶15    Again referring to the product inventory, Bird also argues that the evidence was insufficient to support the restitution order. To successfully challenge the sufficiency of the evidence, Bird "must demonstrate that the clear weight of [the] evidence contradicts the trial court's [ruling]." *See State v. McBride*, 940 P.2d 539, 541 (Utah Ct. App. 1997) (first alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

¶16    Bird contends that, in calculating the amount of restitution he owed Victims, the trial court erred by failing to credit the value of the product inventory that Neighbor retained after Bird left the Clarcon venture. Specifically, Bird argues that the product inventory was valued somewhere between $1 million and $1.5 million at the time it was given to Victim, and that Victims have been fully compensated for their lost investment as a result. Bird also challenges the trial court's decision not to offset Victims' damages by the value of the

product inventory based on the trial court's finding that the inventory was valueless when it was seized by the FDA. Bird contends that the loss in the inventory's value was not attributable to him. Finally, Bird argues that the evidence was insufficient to support the restitution order, claiming that the court's finding that the inventory was valueless was against the clear weight of the evidence.[5]

¶17 Before we reach the merits of these arguments, we observe that Bird did not request a hearing on his objection to the State's request for restitution. The applicable statute provides that, "[i]f the defendant objects to the imposition, amount, or distribution of the restitution, the court shall allow the defendant a full hearing on the issue." Utah Code Ann. § 77-38a-302(4) (LexisNexis Supp. 2016). Nevertheless, in his objection to restitution, Bird encouraged the trial court to rule on the restitution issue by relying solely on his supporting documents and the testimony at trial. And the court did just that. Because the focus of Bird's trial was on the question of his guilt or innocence, the record leaves some questions unanswered regarding the product inventory and other aspects of Clarcon's business.[6] We note that this lack of detail has made it more

---

5. The trial court here determined that both complete and court-ordered restitution amounted to $164,723.17. *See State v. Laycock*, 2009 UT 53, ¶ 30, 214 P.3d 104 ("Court-ordered restitution may be identical in amount to complete restitution, but it need not be so."). Because Bird makes no argument that the difference between these types of restitution is material to the issues on appeal, we do not address this distinction further.

6. Bird eventually asked the trial court for a hearing. Specifically, Bird asked the court to reopen that matter with an evidentiary hearing in the event it refused to amend the restitution order as requested in his motion to amend. The trial court denied the

(continued…)

difficult for Bird to meet his burden to demonstrate error on appeal, a difficulty that might have been ameliorated had he requested a hearing on restitution in the first instance. *Cf. State v. Hummel*, 2017 UT 19, ¶ 82, 393 P.3d 314 ("Uncertainty counts against the appellant, who bears the burden of proof on appeal . . . . Thus, a lack of certainty in the record does not lead to a reversal and new trial; it leads to an affirmance on the ground that the appellant cannot carry his burden of proof." (footnote omitted)). We now address his claims of error.

## I. Offset

¶18    The Crime Victims Restitution Act states, "When a defendant is convicted of criminal activity that has resulted in pecuniary damages, . . . the court shall order that the defendant make restitution to victims of crime . . . ." Utah Code Ann. § 77-38a-302(1) (LexisNexis Supp. 2016). "'Pecuniary damages'" are "all demonstrable economic injury, . . . including those which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the fair market value of property taken, destroyed, broken, or otherwise harmed." *Id.* § 77-38a-102(6). A defendant's "'[c]riminal activities'" include "any offense of which the defendant is convicted." *Id.* § 77-38a-102(2)(a). In determining the monetary sum and other conditions related to restitution, courts are to consider all relevant facts, including "the cost of the damage or loss if the offense resulted in damage to or loss or destruction of property of a victim of the offense." *Id.* § 77-38a-302(5)(b)(i).

---

(…continued)
motion to amend and the alternative request to reopen the matter for an evidentiary hearing. On appeal, Bird does not challenge the court's decision not to reopen the matter.

¶19    "[T]o include an amount in a restitution order, the State must prove that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities." *State v. Brown*, 2009 UT App 285, ¶ 10, 221 P.3d 273. "Utah has adopted a modified 'but for' test to determine whether pecuniary damages actually arise out of criminal activities." *Id.* ¶ 11. This test "requires that (1) the damages would not have occurred but for the conduct underlying the . . . [defendant's] conviction and (2) the causal nexus between the [criminal] conduct and the loss . . . is not too attenuated (either factually or temporally)." *Id.* (alterations and omissions in original) (citation and internal quotation marks omitted).

¶20    The trial court determined that both elements of the modified but for test were satisfied in this case. The court explained that it found Bird guilty of securities fraud at trial based on evidence demonstrating that Bird had "made numerous untrue statements of material facts, omitted to state numerous material facts, and engaged in an act, practice, or course of business which operated as a fraud or deceit" upon Victims.[7] The court further found that Victims relied on Bird in

---

7. Bird asserts that the crime for which he was convicted was selling a security without a broker-dealer license under Utah Code section 61-1-3. *See* Utah Code Ann. § 61-1-3 (LexisNexis Supp. 2016) (providing that it is unlawful for "a person to transact business in this state as a broker-dealer or agent unless the person is licensed"). This claim is not supported by the record and was expressly rejected by the trial court in denying Bird's motion to amend. We likewise reject this argument. Bird was charged and convicted under Utah Code subsections 61-1-1(2) and 61-1-1(3). *See id.* § 61-1-1(2), (3) (2011) (making it unlawful for "any person, in connection with the offer, sale, or purchase of any security, directly or indirectly" to "make any untrue statement of a material fact or to omit to state a material

(continued…)

making their $247,000 investment in Clarcon and that Victims did not receive a return. The court determined (1) that but for Bird's criminal activities, Victims "would not have suffered pecuniary damages from their investment," and (2) that Victims' damages—the amount of their investment in Clarcon ($247,000)—"have a sufficient causal nexus in fact and time with [Bird's] securities fraud."

¶21 Had Victims' involvement with Bird ended with the dissolution of Clarcon, determining the proper amount of restitution would have been simple. Because pecuniary damages include all demonstrable economic injury "a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities," Utah Code Ann. § 77-38a-102(6) (LexisNexis Supp. 2016), the parties direct us to the remedies provision of the Utah Uniform Securities Act as "[t]he relevant civil-action analog to securities fraud." Here, consistent with the civil damages available to a victim under that provision, Victims would be entitled to recover the entirety of their $247,000 investment in Clarcon, an investment they would not have made but for Bird's securities fraud. Damages for a victim who no longer owns a security are calculated by starting with the consideration paid for the security and subtracting the value of the security when the victim disposed of it. *Id.* § 61-1-22(1)(b), (c).[8] The security in this case is the ownership interest in

---

(…continued)
fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading," or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person").

8. The parties agree that the 2012 version of the securities fraud statute applies here. We follow their lead.

Clarcon, which the parties agree was disposed of when Clarcon dissolved in 2007. Victims paid Bird $247,000 for that security, and no one argues that the security had any value when Clarcon was dissolved. This case is complicated by the fact that following the dissolution of Clarcon in 2007, Bird transferred to Neighbor product and other inventory that Bird claims should be offset against the amount he obtained from Victims by fraud.

¶22    Bird contends that in calculating the amount of restitution he owed Victims, the trial court erred in failing to credit the value of the product inventory that Bird gave Neighbor after Bird left the Clarcon venture.[9] According to Bird, the product inventory was "not valueless" when he gave it to Neighbor, and the trial court should have reduced the product inventory's value from the remaining restitution amount of $164,723.17. Relying on testimony that he claims supports a finding that the inventory was worth $1 million to $1.5 million, Bird believes no restitution was warranted.

¶23    This court has indicated that, when determining the amount of restitution, it may be appropriate to credit against the victim's losses sums received by a victim after the defendant's fraud. *See State v. Johnson*, 2009 UT App 382, ¶¶ 48–49, 224 P.3d 720 (remanding for the trial court to determine whether certain payments received by the victims should offset the amount of restitution). Generally, in the civil context, a defendant bears the burden of proof when he requests an offset. *See J. Henry Jones Co. v. Smith*, 494 P.2d 526, 527 (Utah 1972) ("The plaintiff having delivered the equipment, the defendant's claims of offset against the stated price are affirmative defenses upon which he has the

---

9. On appeal, neither side challenges the trial court's decision to credit $82,276.83 for the value of the other assets against the amount of Victims' principal investment in calculating restitution.

burden of proof."). Bird has not identified any provision in the Crime Victims Restitution Act that would alter this general rule in the restitution context, and he concedes that, once the State established that Victims had suffered a loss of $247,000 due to Bird's crime, "[t]he burden then shifted to [him] to present any offsets." Accordingly, we accept that Bird bore the burden to prove the value of the product inventory.

¶24 Based on the evidence presented, we are not persuaded that the trial court abused its discretion in rejecting Bird's position that the product inventory should be offset against Victims' lost investment based on Bird's claim that the inventory was worth between $1 million and $1.5 million in 2007. Bird's valuation is based on Neighbor's trial testimony that Bird showed him the inventory and Neighbor estimated its retail value to be $1.5 million. Neighbor testified that he arrived at this "[b]all park figure . . . based upon [Bird's] price that he told [Neighbor] it was per bottle." This estimate was, at best, a guess at retail value based entirely on representations Bird made to Neighbor to induce him to invest in Clarcon.

¶25 More importantly, there was no evidence offered during trial or in support of Bird's post-trial restitution objection to support Bird's claim that the product inventory had a discernable value against which Victims' losses should be offset. The testimony on which Bird relies says nothing about the wholesale value of the inventory in 2007, and the evidence the court received demonstrated that the inventory was not readily marketable. Neighbor testified that while there had been some "interest" in the product, "[t]hat does not necessarily mean they had volume sales." And a salesperson who had been employed by Clarcon testified that in 2007, the venture "was as start-up as it gets," and that while there were "some initial sales, . . . it was the very beginning stages of that." He testified that while he might have sold a couple cases of the product, his efforts were "preliminary" and the operation was "in its infancy."

¶26    Thus, while the testimony Bird relies on suggests that the inventory had *potential* value, Bird cannot demonstrate that the trial court erred in not valuing the product somewhere between $1 million and $1.5 million where Bird provided no evidence to support his claim that the inventory had a *marketable* value at the time it was given to Neighbor—that he could have converted it to cash to recover the lost investment. In fact, Bird's own testimony suggested that the inventory had no value without the investment of considerable effort to sell the product. Bird testified that he told Neighbor that he was "going to throw [the product] away" if Neighbor did not take it. This strongly indicates that the inventory did not have the value Bird now suggests.

¶27    Instead, the evidence presented to the trial court demonstrated that the product inventory only had value to the extent it could be sold. And as the trial court ultimately concluded, the inventory was valueless because it was seized by the FDA before any economic benefit could be derived from it. Bird contends that the trial court erred in reaching such a conclusion, asserting that "CBCL was not shut down based on the crime for which Bird was convicted," and that CBCL's "own failure to follow FDA requirements" was "outside Bird's control." Bird's argument is misguided. The relevant question here is not whether CBCL was shut down as a result of Bird's fraud. The relevant question is whether the product inventory had value sufficient to compensate Victims for at least some portion of their investment. We conclude that the trial court did not err in finding that it did not. The evidence demonstrated that Victims worked for two years to extract a return from the inventory, including investing additional funds into the venture. The fact that they were ultimately unable to succeed before a profit could be made is a risk the trial court appropriately required Bird to bear under these circumstances.

¶28   In reaching this conclusion, we note that had Bird demonstrated to the trial court that the product inventory could have been liquidated in 2007 with minimal effort, and that Neighbor acted unreasonably in holding onto the inventory, the result might well have been different. But Bird bore the burden of proving the value of the offset.[10] *Supra* ¶ 23. Simply pointing to evidence of a theoretical value does not undermine the trial court's conclusion that, even though Neighbor made a considerable effort to recover from Bird's fraud, he was unable to realize any value from the inventory.

## II. Sufficiency of the Evidence

¶29   Bird briefly contends that the evidence was insufficient to support the restitution order. "To successfully challenge the sufficiency of the evidence, appellant must demonstrate that the clear weight of [the] evidence contradicts the trial court's [ruling]." *See State v. McBride*, 940 P.2d 539, 541 (Utah Ct. App. 1997) (first alteration in original) (citation and internal quotation marks omitted).

¶30   Bird has not met his burden on appeal. First, Bird concedes that "[t]he State herein established by evidence that

---

10. Bird asserts that, after he pointed to Neighbor's testimony that Neighbor received $1.5 million in assets, "[t]he burden then shifted to the State to provide rebuttal evidence to the requested offsets." But this assertion presumes that Bird satisfied his initial burden to prove the value of the offset, and as we have concluded, the trial court did not exceed its discretion in rejecting Bird's proposed valuation of the product inventory. *Cf. Anderson v. State Farm Fire & Cas. Co.*, 583 P.2d 101, 104 (Utah 1978) (noting that a witness's testimony regarding the value of lost property is "to be given such weight and credibility as the trier of fact finds reasonable under the circumstances").

[Victims] had entered into a securities agreement with Bird for $247,000, which was found to be the loss and/or injury incurred" by Victims stemming from Bird's crime. Thus, there is sufficient evidence in the record to support a causal nexus between Bird's fraud and Victims' loss.

¶31 Second, Bird argues that the trial court's findings that the product inventory "was valueless due to the FDA shutting down CBCL two years later was against the clear weight of the evidence." Bird contends that the trial court was forced to infer that the inventory transferred to Neighbor was the inventory recalled by the FDA two years later, and that it was "more appropriate" to infer that the inventory given to Neighbor in 2007 had already been sold. While there may be evidence in the record to support Bird's inferences, he has failed to demonstrate that the trial court's contrary conclusions were against the clear weight of the evidence on the limited record before it. There was sufficient evidence that Neighbor had not sold the product inventory he received from Bird and that it was that inventory that was recalled by the FDA. Thus, Bird has not met his burden of showing that the clear weight of the evidence contradicts the trial court's determinations.

CONCLUSION

¶32 For the foregoing reasons, we affirm the trial court's restitution order.

––––––––––