2021 UT App 40

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KRISTOPHER BLAKE CHADWICK,
Appellant.

Opinion
No. 20190786-CA
Filed April 8, 2021

First District Court, Logan Department
The Honorable Thomas Willmore
No. 171101238

Paul H. Johnson, Attorney for Appellant

John D. Luthy and Spencer D. Walsh, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGE GREGORY K. ORME and SENIOR JUDGE KATE APPLEBY
concurred.[1]

HARRIS, Judge:

¶1      The owners of a house (Homeowners) hired Kristopher
Blake Chadwick to remodel two bathrooms for a bid price of
$7,270. Unbeknownst to Homeowners, Chadwick had only a
"handyman license" and was therefore not licensed to work on
projects valued over $3,000. Homeowners also did not know that
Chadwick had been convicted, on three prior occasions, of
criminal misdemeanors for contracting without a license.

---

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

¶2     Chadwick's work for Homeowners was, in many respects, not of high quality. He ordered a bathroom vanity that was too large to accommodate installation of a toilet, and his tile work was poor—tile laid on the bathroom floors could be lifted up by hand, and there were large holes in the grout between the tiles affixed to the walls and ceilings of the showers. Dissatisfied with Chadwick's work, Homeowners contacted the Utah Division of Occupational and Professional Licensing (DOPL) and discovered that Chadwick was licensed only as a handyman. At that point, Homeowners terminated their contract with Chadwick.

¶3     Shortly thereafter, Homeowners sent a letter to DOPL complaining about Chadwick and detailing the poor quality of the work he had done for them. At the end of that letter, Homeowners asserted that, as a consequence of Chadwick's substandard work, "[t]he bathroom floor tiles will need to be removed and re-tiled" and "the grout in both showers will need to be removed and re-grouted." Homeowners stated that they had obtained "estimates for redoing the floors in both bathrooms and removing the defective grout" on the walls and ceilings of the showers and "redoing" that grout.

¶4     After investigation, the State charged Chadwick with communications fraud, a third-degree felony, and contracting without a license, a class A misdemeanor. Later, Chadwick entered into a plea agreement in which he pled guilty to the misdemeanor charge and the State agreed to dismiss the felony charge. As part of the agreement, Chadwick agreed to "pay restitution as ordered by the court after a restitution hearing."

¶5     At the restitution hearing, the State presented testimony from one of the Homeowners and introduced several exhibits into evidence, including the letter Homeowners sent to DOPL, as well as a video and several photos depicting Chadwick's shoddy work. In particular, the State presented evidence that the

bathroom vanity was too big for the space; that the tile Chadwick laid on the bathroom floors had been improperly installed, could be pulled up by hand, and needed to be removed and replaced in its entirety; and that, according to the "estimates" referred to in the DOPL letter, the grouting on the shower walls and ceilings was substandard and needed to be redone. On appeal, Chadwick does not contest the restitution order as to these three components of restitution.

¶6     But the order included one additional component: that Chadwick pay for the complete *retiling* of the shower walls and ceilings, and not merely for their *regrouting*. Chadwick appeals only that portion of the court's restitution order, and contends that the State presented insufficient evidence that the tile (as opposed to the grouting) on the shower walls and ceilings was improperly installed and needed to be removed and replaced. "We will not disturb a district court's restitution determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Ogden*, 2018 UT 8, ¶ 25, 416 P.3d 1132 (quotation simplified). A restitution determination constitutes an abuse of discretion if "no reasonable person would take the view adopted by the [district] court." *State v. Bird*, 2017 UT App 147, ¶ 14, 405 P.3d 726 (quotation simplified). And when a defendant "argues that the evidence was insufficient to support [a] restitution order," the defendant "must demonstrate that the clear weight of the evidence contradicts" the court's ruling. *See id.* ¶ 15 (quotation simplified).

¶7     In our view, Chadwick is correct in pointing out that the State presented no direct evidence that the tile itself—as opposed to the grout—on the shower walls and ceilings was improperly installed. For his part, Chadwick testified at the restitution hearing that, even though there were problems with the way he grouted the tile on the shower walls and ceilings, he properly installed the tile itself. And the State introduced no direct evidence to rebut Chadwick's testimony on this point. The

testifying Homeowner indicated only that, "[b]ased on the quality of" the overall tile work done by Chadwick, Homeowners "decided that" the tile on the shower walls and ceilings "needed to be redone." But the Homeowner did not testify that the tile on the shower walls and ceilings was improperly installed, and implied that Homeowners made the decision to tear out the tile, rather than just the grout, on their own; indeed, the testifying Homeowner did not indicate that any contractor had told him that the tile on the shower walls and ceilings needed to be removed. And the State did not introduce even any indirect evidence (for example, a bid or estimate) of a contractor's opinion that the shower tile needed to be replaced; notably, the only evidence of any "estimate" regarding the shower was the one mentioned in Homeowners' letter to DOPL, in which they indicated that only the grout—and not the tile—in the shower walls and ceilings needed to be replaced, and that they had obtained a bid from a contractor willing to do that more limited work.[2]

¶8    In the absence of any direct evidence supporting the State's request that Chadwick pay for a complete retiling of the shower walls and ceilings, the district court grounded its order in two separate notions. First, the court declared that, because of the overall poor quality of Chadwick's work, Homeowners' "confidence in the quality of [Chadwick's] work was completely shaken," and on that basis determined that Homeowners were entitled to "do whatever they want[ed] as far as having [the shower tile torn] out and be made whole." And second, the court

---

2. During closing argument, the prosecutor asserted that Homeowners determined, after consulting with "a new tile expert," that all the tile work in the showers needed to be redone. But no actual evidence—in the form of testimony or documents—that would support the prosecutor's assertion is present in the record.

declared that "[t]here is no subcontractor, there is no tile man that's going to come in and want to use" the materials that Chadwick "messed up," and on that basis determined that Homeowners were entitled to restitution for all of Chadwick's bathroom tile work. Neither of these rationales adequately supports the court's restitution order.

¶9 First, the court's "no confidence" rationale is insufficient. To be sure, Chadwick's work was poor in many respects. But both the State and the district court acknowledged that some of his work was just fine, including work Chadwick had done on doors, shelving, and molding, and the court refused to award restitution relating to that work. The court correctly analyzed these other areas of Chadwick's work. After all, Chadwick should be ordered to pay restitution only for those portions of his work that the State proved were poorly done; even if his work was shoddy in some areas, that alone cannot justify a restitution order that compels him to pay for other work that the State did not prove was inadequate. *See Ogden*, 2018 UT 8, ¶ 54 (stating that the State is required "to demonstrate that the expenses are necessary and that the amount needed to cover those expenses is firmly established in the record"). Homeowners likely did have no confidence in Chadwick's work, after all was said and done, and almost certainly will not hire him again. But Homeowners' lack of confidence in Chadwick's work in general, standing alone, cannot justify a restitution award for every aspect of that work, absent evidence that each aspect of that work was poorly done.[3] *See State v. Mooers*, 2018

---

3. Citing *Homer v. Smith*, 866 P.2d 622 (Utah Ct. App. 1993), the State points out that the court is entitled to "draw reasonable inferences" in making its restitution determination, and asserts that the court's "no confidence" rationale represented a reasonable inference. But reasonable inferences must be drawn from actual evidence, and may not be speculative. *See State v.*

(continued…)

UT App 74, ¶¶ 15–16, 424 P.3d 1126 (determining that the court abused its discretion in awarding restitution for purchases made by the victims without evidence that the purchases were tied to factors listed in the relevant statute).

¶10    Second, the "no self-respecting tile contractor" rationale does not support the court's order either, at least not on the facts of this case. Certainly, such logic could support a restitution order, in a case where evidence in the record supported it. For example, had a contractor in this case testified that he or she would not touch the tile in the showers without being allowed to start from scratch, a restitution order compelling Chadwick to pay for a complete retile would be supported by evidence. But here, there is no such evidence. The record is devoid of a bid from any contractor for the complete retiling of the showers. In fact, the only bid even referenced in the record is the one referred to in Homeowners' letter to DOPL, in which they represented that they had procured a bid for the regrouting alone. Thus, the only evidence present in the record, far from supporting the district court's order, actually suggests the opposite: that there exist tile contractors who would agree to regrout someone else's tile job.

---

(…continued)
*Granados*, 2019 UT App 158, ¶ 26, 451 P.3d 289 ("A reasonable inference is a conclusion that can be drawn from the evidence . . . ." (quotation simplified)); *see also Salt Lake City v. Carrera*, 2015 UT 73, ¶ 12, 358 P.3d 1067 ("[T]he difference between an inference and speculation depends on whether the underlying facts support the conclusion."). In this instance, the record contains no actual evidence that the tile on the walls and ceilings of the showers needed to be replaced, and therefore there exists no evidence from which a reasonable inference in that direction might be drawn.

¶11 Perhaps recognizing the evidentiary gaps, the State contends that the district court's statements can be "viewed as" the court tacitly or impliedly taking "judicial notice of the fact that no other contractor is going to simply re-do the grout in the showers." Pursuant to our rules of evidence, a "court may judicially notice a fact that is not subject to reasonable dispute because it" is well known in the area or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Utah R. Evid. 201(b). But the sort of facts that are subject to judicial notice are matters of "common and general knowledge," and matters that are "disputable" do not "fall under the head of common knowledge and so will not be judicially recognized." *See DeFusion Co. v. Utah Liquor Control Comm'n*, 613 P.2d 1120, 1124 (Utah 1980) (quotation simplified). We do not construe the district court's statements as having incorporated—even impliedly—concepts of judicial notice, and in any event it would have been inappropriate for the court to have applied those concepts in this context, because the question of whether contractors will agree to regrout another contractor's tile work is not the sort of thing that is subject to judicial notice.

¶12 Ultimately, neither of the court's rationales for ordering Chadwick to pay for the complete retiling of the shower walls and ceilings was supported by sufficient evidence. Accordingly, we conclude that the court abused its discretion by ordering Chadwick to pay for complete retiling, as opposed to merely regrouting, of the shower walls and ceilings. On that basis, we vacate the district court's restitution order and remand this matter for further proceedings, in which the court will need to determine the amount of restitution to be awarded to Homeowners for (a) replacement of the bathroom vanity, (b) complete retiling of the bathroom floors, and (c) regrouting (but not complete retiling) of the walls and ceilings in the showers.

————————